Please proceed, Mr. Pollack. Thank you, Your Honor. May it please the Court, Howard Pollack of Fish and Richardson for Appellant Patent Owner Power Integrations. We have two issues I'd like to discuss this morning related to the Board and the Patent Office's rejection of the claims that are at issue. The first is the issue of claim construction, which addresses all of the claims and we believe forms the basis for reversal of the entire action by the Patent Office. And then there's also a second issue that is how the Patent Office applied the prior art to Claims 17 and 19. So it's limited to those two claims. Can I ask you just a couple of procedural questions? Is it true that the District Court opinion on coupled and the conclusion it reached was presented to the Office during this re-exam? Yes, Your Honor. During the re-exam, the Applicant Patent Owner told the Patent Office that the proper construction, based on the intrinsic evidence, was the District Court's construction, which is the construction that we are advocating here and have always advocated at the Office. And you argued to the Office that it ought to follow the District Court's construction or that it's certainly relevant. Exactly, Your Honor. Not that it was bound and not that it needed to follow, but that the evidence of that construction showed that in light of the intrinsic evidence, that was really the only reasonable construction of the claim and that the original construction, the construction that we're dealing with today from the Board, was unreasonably broad. I just don't see anything in the Board opinion that even referenced the District Court's opinion or treated it or discussed it in any way. Did I miss anything? No, Your Honor. Is there anything in the course of the re-exam where the Office expressly explained why it thought the District Court's opinion ought to be rejected? I mean, apart from, granted, they're applying a different standard. Whether it's the correct standard or not, maybe it left for another day. But they're applying a different standard. But at the same time, I just would have felt like this was something important and relevant. You did argue it, right? Yes, Your Honor. And you presented it to them. Yes. I just am sort of flabbergasted at the lack of addressing it. Well, I can't speak for the Office. I mean, I think that the clear message that comes out in the Office actions, especially at the Board in response to the briefing, is this broadest reasonable construction can be informed by a generalist dictionary definition. And if there's no express definition in the patent specification to the contrary, then the Board can just stop. And it doesn't really need to dig into the details of the disclosure. We feel that that really is the error here, that the Board looked at the dictionary definition. But the District Court here relied on the specification and said, according to the specification, it would inform its understanding of the claim term, right? That's exactly right. I mean, you didn't necessarily go so far as to say lexicography or disavow or anything like that. But he relied heavily on it. Yes, Your Honor, he did. And in fact, this Court, in addressing the issues on appeal in the parallel case, which the claim construction, I think it should be really clear, the claim construction that was applied at the District Court was the claim construction that my client advocated for. And so, technically, we won at the District Court. That construction was not appealed by the defendant. Well, the defendant actually pursued anticipation against you, too, and then dropped it. Correct. And didn't appeal the claim construction or the anticipation issue. Exactly, Your Honor. And then they decided to go after you. I mean, I have to say, when I opened the brief and I said, wait a minute, the District Court found no obviousness. It appealed to us and we affirmed. And the PTO is going to find on the basis of the identical reference that there's, in fact, anticipation. Exactly, Your Honor. That's exactly the situation we find ourselves in. And I agree with, I think, your reaction is, how do you square those two ideas? And I guess their argument is BRI. Exactly. And our position here is that BRI is not unfettered. It's not that the Board can look at the words in the abstract and apply a dictionary definition that's not even in the specific art and say, that's enough. And we hear you, that there's language in the specification that would indicate that the patent might have meant something narrower, but we don't find an express disavowal, we don't find an express definition, so we can stop. In our view, that's an inappropriate analysis, that the analysis should have involved more detailed examination of the specification. We believe, and let me address, there's a couple of issues that I think are important to clarify beyond just using a dictionary definition. The Director appears to be pointing to... Do you think maybe they weren't aware of the District Court opinion? I realize that I'm beating a dead horse, but maybe we ought to vacate and remand so they get a chance to look it over and they can actually tell us why they're rejecting it. Because I'm just so floored that it wasn't addressed. I mean, believe me, we've had opinions before even when the standard's identical. Two different District Courts construe the claim two different ways. But the second one never failed to address the first one and say what was wrong with it. And that's the part that is just really baffling me. Yes, Your Honor. We certainly made arguments, and they're in the briefing, in the responses to the office sections, the briefing to the Board, that lay out exactly the reasoning that is in the District Court's analysis. I mean, isn't the purpose of BRI to shore down or nail down the scope of the claim so that nobody would be surprised by an unsuspecting assertion by a patentee of a claim scope that might be broader than what you know, I think it is. Right? I agree. And in this case, the patentee's actually on record expressly defining what his claim scope is and winning, which it seems to me would absolutely require collateral estoppel. I can't see a way around collateral estoppel against you if you tried to seek a broader claim scope than that. In that circumstance, does BRI still make sense? Well, again, as you mentioned just a moment ago, whether BRI is the appropriate standard in re-exam is something that's actually being debated right now. We didn't make the argument that the Patent Office couldn't apply it, because we don't think we need to get there. But I actually do agree with you. I think in the context of a re-exam, particularly where you have a construction that's been fully vetted in District Court, that there's been an appeal, which implicitly at least acknowledged and didn't change that result, for the Patent Office to turn around and essentially completely reconstruct the patent in a way that's contrary to all that went before doesn't seem the best use of resources. Let me take the other point of view here and just kick it around with you a little bit. The word couple is a broad word, and things could be directly coupled or indirectly coupled, and you agree that there can be things in between. If two things are coupled together, that doesn't mean they have to be directly connected. What is it in the intrinsic record that provides an express definition that would add the limitations that the District Court found appropriate? Yes, Your Honor. Thank you. I think that acknowledge couple in the abstract might be a broader claim. In this specific specification, we start with the language of the claim, and the claim specifically sets out a structural relationship between the components. The Patent Office said all it means is they're joined in the same circuit. With respect, we think that that totally reads out the coupling. It reads out the fact that you have these three components because the claim already says that it's a jittering circuit that comprises these three components, but they're connected in a certain way to allow each of the components to control, in a specific manner, other components in the circuit. For example, the oscillator is recited as having a control input that varies the switching frequency. The digital-to-analog converter is coupled to that control input so that the output of the digital-to-analog converter DAC controls the oscillator frequency. There's a coupling for the purposes of control. With regard to the counter that's coupled, it's coupled to the oscillator, and in the description, the oscillator oscillating is what gets the counter to count. Coupled to the output of the oscillator. That's a fairly specific recitation, but in terms of the input, it doesn't say anything is coupled to the input. It says the counter causes the digital-to-analog converter to adjust the control input, but it doesn't talk about a direct connection from the output of the counter to the input of the converter. The counter is coupled to the digital-to-analog converter. That's all it says. It doesn't say the output is connected or the input is coupled. It just says that the two units are coupled. Right. The description, though, it goes on to say that the counter causes the digital-to-analog converter to perform in a certain way. But it could cause it through an intermediate circuit of some sort. I mean, here you have a ROM or an EPROM, and there's a causal connection. We actually disagree with the office in its interpretation of there being a causal connection, because they basically argued that just because there's some action over here and an action occurs further downstream, that means the upstream action causes it. But isn't that what happens? The counter will trigger something for the EPROM. The EPROM will cause a signal to trigger a change in the D-to-A converter, right? It's the output of the memory that is what's causing the change. No, but it's triggered by the input from the counter. Right. But the counter is triggered by the oscillator. The counter by itself wouldn't do anything. Without the oscillator oscillating, the counter would just sit there. And so the claim says it's the counter that causes the digital-to-analog converter to vary the frequency, not the oscillator, not something else. I see that I'm already in my rebuttal. One more question. I'll restore your rebuttal time. But one more question, which is, this is, again, sort of going back to the idea of the board's opinion. One of the things that really caused me concern was I thought, I mean, I went back and I read your appellate brief. I've got it open in front of me now. I read all the briefs below, and the board consistently throughout its opinion characterizes your argument as one that requires a direct connection between the two things and no intervening component. Am I wrong? I do not understand you to have proposed that construction at any point in time. I understood your construction to be about current voltage or, I mean, I'm sorry, yeah, current voltage or signal having to be unaffected. And you don't even say all of them. You just, you know, that is, I don't actually see the board's opinion ever addressing that construction at all. Yes, Your Honor, we... Is that correct? That's correct. You are exactly correct. What we said was... When the district court adopted the very construction you argued throughout this proceeding, they never even mentioned. And they, in fact, attribute to you a totally different construction. That's correct. Is that correct? Okay. I just want to say a couple of words on the other issue because it's sort of separate from the claim construction. Certainly, if the claim construction is vacated or reversed, it would affect all the claims. With regard to Claim 17, the board found a disclosure. This has to do with whether the input to the oscillator is a voltage, whether the oscillator is a voltage-controlled oscillator. And the prior art, everyone agrees that the particular figure, it's figure 5 of the Habetler reference, it's shown in our brief at page 6, does not specify what the inputs to the triangle generator, which is the oscillator equivalent, are. The board tries to pull pieces from the reference and says, well, it says voltage over here, or it says voltage over here. We cited a case that the board can't do that. They can't combine embodiments. No, but here's the problem. A little earlier in that reference when I was reading, it talks about H of V or V of H. It talks about voltage. And what you're asking for now is for me to conclude there's no substantial evidence for a fact-finding by the board about what a reference discloses. I agree with you. Certainly, at the place of the figure, it's uncertain and it does seem to talk about a voltage. And I don't feel like they're choosing from two different embodiments, whether I agree with it or not, or construe the reference that way or not. I feel like it's hard to say there isn't substantial evidence for that determination by them. I would say, if you go back and look carefully, everything that the office points to has to do with an output of either the PWM circuit or an output of the oscillator, which we agree are voltages. The problem is that those don't educate at all, or you can't infer from that that the input to the oscillator is a voltage. And it's not disputed. The patent itself, our patent, shows that you can have a current-controlled oscillator or a voltage-controlled oscillator, or actually other kinds of oscillators that are controlled. So the input is the key. And the reason there's no substantial evidence is because nothing that the board pointed to can inform on the question of the input to the oscillator. And as we argued below, in fact, looking at the figure, a person with ordinary skill would conclude otherwise. Okay. Thank you, Mr. Pollack. Ms. Nelson? May it please the Court. Good morning, Your Honors. The issue that we have here at bottom is really that power integrations wants to construe this term, couple to, in a way that gives it the freedom to go after infringers that have something, an intervening component, but they want to read out the prior art that has this memory that's in between. And the board simply, power integration simply can't get there by relying on construction of the term couple to. The board construed that term in its most reasonable way, and certainly its broadest reasonable construction. The claim does not recite directly couple to. It doesn't require direct coupling. The specification doesn't. But that's not what he argued. Not before us, not before the office, not before the district court. He never argued that it required direct coupling. And that is one of my largest problems with this case, is I feel like the board totally failed to appreciate the claim construction argument he was proffering, because they never mention it, and all of his documents are clear about what it was. Maybe this case would be different if they actually paid attention and didn't misattribute to him a construction he never, not only never asked for, but expressly disavowed. In his brief, he says, we are not saying it's a direct connection. And yet the board quite clearly says, appellant argues, direct connection is required. And he actually says the opposite in his brief. So my concern is that the board wasn't careful here, and so how can I be sure they'd reach the same conclusion when they clearly didn't appreciate what his argument was, even though it was crystal clear and there's no confusion in the documents. And when you stand here and start off with saying there's no direct connection, you don't think there needs to be. That's not relevant to the construction he argued. So why, forget about what the construction is, why shouldn't I vacate and remand this when it's apparent that the board didn't consider the argument made by the applicant? Respectfully, Your Honor, I disagree, because looking to the appellant's brief, I think there was a little bit of variation in their arguments, because they did talk about it many times, about simply requiring a control relationship. Now, admittedly, there were times where they went further and said, oh, and there has to be a signal that goes between, there has to be either a voltage or a current or some kind of control signal that goes between the two. But what the board has done here is it hasn't written, read out of the claim this control relationship. In fact, that's spelled out in the claim. And the board has required and looked to the priority. But do you disagree with me? The board expressly and repeatedly represented that their argument was one that required direct connection. Can you point me to anything in the board that would suggest that it appreciated that that was not, in fact, his argument and that his argument had to do with either a voltage current or signal passing? I think initially... Anything in the opinion. Well, on rehearing, it seemed to understand that. On rehearing, the board did appreciate that because it said at A18, it acknowledged that Appellant has said that coupled to can, there can be the presence of intervening components. But it said basically, well, the prior art has those intervening components, so we're not sure where that gets him. And I think that's the problem with this case, is that even if it requires those signals that go through, going from one component to the other, we'd still be stuck with the issue is can those signals be, can they go directly or do they have to, are they required to go directly or can they go indirectly from the converter to the, I'm sorry, from the counter to the converter. So I'm not sure where even their construction gets them. But at the end of the day... I'm not sure where their construction gets them either, but I feel like it seems clear to me from the record, the board didn't consider it. And I'm nervous about me jumping to a conclusion, since I don't like to take the board's job away from it. The board was simply looking at the claim language and the specification and found that based on that and under the broadest reasonable construction, which it is bound to use, that there was nothing in there that would require them to find anything more specific and not even to require these signals going from one to the other. All that's required by the claim is that there's the control relationship, which is spelled out there, that the counter has to cause the converter to adjust the control input to vary the switching signal sequence. And that is done by the priority. I'd be happy to walk through that with you. But I guess I don't even see on page 18, I'm sorry, I don't mean to be the dead horse, but where on page 18 did the board appreciate what the actual construction was that Power Integration was arguing? Well, it basically at the top of 18, it recognized that their construction did not require that there be a direct connection. It says, even assuming that appellant's contention that elements are coupled with the presence of intervening components is true, and further assuming that appellant's assertion that a tabular discloses an intervening element between a counter and a converter is also true, it follows tabular would disclose a counter under appellant's proposed analysis. But that can't be true if appellant's proposed analysis was understood by the board because it wasn't just you could have an intervening component, it was that the signal, the voltage or the current had to pass through unaffected. So the board didn't understand, based on that sentence, what their construction actually was because it says even under their construction, appellant would disclose that. And that's clear, it doesn't, I mean, the EEPROM absolutely unquestionably affects the signal, the voltage and the current, so there is no substantial evidence otherwise. So that can't be the case, so I feel like that doesn't actually demonstrate to me that the board appreciated power integration's construction. Well, I think that's because power integration was a little bit varied in terms of what its preferred construction is, they keep kind of changing, and they did seem to, even here before this court in the blue brief, it repeatedly talks about this control relationship and you can't disrupt the control relationship, and then I think a couple of times it went and said something more, and it said, oh, and it also requires, like, there has to be the signal that goes between the counter and the signal, I'd be happy to walk through, point to that, because I have some of the sites here, but I think that's part of the problem, what the board was struggling with. But I think at bottom, the board, you know, appreciated that it was tasked with looking to the specification, the ordinary meaning, and the claims, the specification, the ordinary meaning, and all of those pointed to a broader construction. And here, they have an opportunity to amend their claims and to put in something there, they could have put in that there has to be the signal that goes from one to the other. I'm not sure that would change the anticipation rejections, because I'd like to explain. Under the APA, the board is required under the APA to consider and explain how it addresses all substantial evidence submitted to it, that's an APA requirement. I assume you're familiar with it, but take my word for it for now. So, I recognize that the district court's decision in this case is not, quote, evidence, it's authority, persuasive authority, I just don't understand for the life of me how the board could ignore it and not address it, I've never ever seen a case where one court has disregarded another court's opinion on the identical issue, how could the board not at least mention it? Well, I don't think it's fair to say that they ignored it, I think it was there before them, they just simply didn't speak to it. And I think what it, you know, it pointed to the evidence which they thought was relevant in terms of construing the claim, and based on that, it arrived at the construction that it did. But there's, to the extent that they argued and pointed to the district court construction, the board was aware of it, but it just didn't seem that that would change. If the claim construction in that district court opinion had been appealed to us, and we had affirmed it, would the board have been free to deviate from that construction during re-exam? I think it would, because, again, they're under the broadest reasonable construction and just because... How can any construction be reasonable other than the one that we affirm as the correct construction under law on a given term and a given patent at that point? Is anyone free to argue a different construction after that? Before the agency, again, I think that it's a different setting where they can amend their claims and where the agency is tasked with construing under the broadest reasonable construction, but that's not what we have here. What we have here is a case where the claim construction was not appealed. I will say that really the differences between these two, the prior arts, I'd like to walk you through that. The differences between the prior art and their invention is really not as significant as they make it out to be. I would point you to even your own summary of the prior art, which appears at 1359 of the Federal Circuit's prior opinion, where it describes sort of essentially how their invention works and at the second paragraph that begins at the heart of the 876 patent, it explains that the counter, box 140, basically monitors the power supply's oscillating drive signal B, which is shown on the figure, which repeats periodically and as the oscillating drive signal repeats, the digital counter counts the number of repetitions. And then over on the next column, it says the digital to analog converter generates an analog signal that's proportional to the counter's tally. So really all that's happening is the counter is using a number and based on the number, it controls, it sends a signal to the converter and the converter makes an analog signal that's proportional to that and that then affects the oscillator's switching frequency. The only difference in the prior art is that instead of that number being derived from the number of signals that comes from the oscillator, it's a number that they get from a memory that stores random numbers and those random numbers are what basically keys the signal that the converter, the converter's analog signal is proportional to that random number. So there's not really as big a difference as they try to make it out to be. But in the patent, forgive me if I don't get the technology right, I'm going to try my best. The patent, the counter causes the digital to analog converter and causes it to vary the frequency and the way it works is counting, one, two, three, very monotonously and it results in a step function look, right? Because from one to two is just one step up and so the frequency is just kind of going to go like a set of stairs because that's the way that the counter works. And one of the things this patent talks a lot about, and I realize this might be relevant for obvious but not in anticipation, is the value of reducing the number of components for efficiency purposes and otherwise. So what prior art does is it uses an EPROM which has a random number generated in each register slot, you know, each little buffer register, whatever it is, it's a little slot. And so the counter prompts the memory to spit out things and then the frequency gets varied based on whatever the memory spits out. It is true that the counter prompted the memory to spit it out, no doubt, but the counter then didn't cause the variation in frequency. The counter in the claimed patent bears a direct undeniable relationship to the variation in frequency that is, it's absolutely causing not only a variation in frequency but the precise variation in frequency. The counter isn't doing that in the prior art, it's really the EPROM that's doing it. The counter is prompting the EPROM to do it, but the EPROM is determining the variation in frequency. Right? At the end of the day, it's all about numbers, and it's whether the number is a number that's based on the number of repetitions of signals from the oscillator, whether it's a random number that's in the memory. At the end of the day... So you're saying it doesn't matter whether it's just the step or whether it's a totally random... Right. It would either go stepwise, as it does in there, as it goes stepwise. In the case of the prior art, it's jumping around because you have a random number as the oscillator, the signal from the, the analog signal from the converter would be somewhat random. It jumps around. And are you saying that all the patent cared about was varying the frequency and not how it was varied? Right. Exactly. That's the whole point of it, was to vary the frequency to get rid of EMI noise, and in both cases, it does that. So there's really not this big difference, and at the end of the day, it's the counter or the clock that's really controlling the memory, it just stores information. It's not an... As the examiner and the board found, it's a passive device. It's not, it's not doing... It's the counter that's really controlling what's going on. And the claims that are at issue, Claim 1 and Claim 17 and 19, don't have any details with regard to stepwise incrementation or direct correlation or anything of that sort? No, they don't, and that's exactly what they could have, and they resisted the opportunity. Here they were before the patent office, and they could have amended the claims to say that they specified that it had to be a direct connection between them, or they could have specified that it has to have, and really, the relevant distinction is it does the stepwise thing and that it's keyed off the signals that come from the oscillator, so it could have put those kind of limitations into the claims, but they resisted doing that, and the reason is that they want to be able to go after infringers that do things a little bit differently, that have intervening components, and they can't get it both ways, and that's essentially what the problem is here. But can you really say, I'm just wondering, I'm not suggesting that the board doesn't win under a possibly different construction, but the idea to me that any two things that happen to be in the same circuit are coupled feels really, quite frankly, excessively broad. I mean, these two things could be separated by hundreds of components. What is the output of one and the input of the other can bear no relationship to each other whatsoever. Are those two things really coupled? I mean, is that really a fair definition of coupled in the electrical arts? I believe it is, and I don't think the board actually went that far. That's not the case. That's not the case. You didn't have to go that far, but that is how far the board went. Well, the board didn't go that far, because all that really was relevant here was whether or not you could have a memory in between. Didn't they say the definition of coupled is any two things in the same circuit are coupled? Devices that are joined in a circuit, and that's because that's the definition. That's how one of ordinary skill in the art would understand it. But, you know, I don't think that it requires, you know, I think there could be circumstances where things are in the same circuit and they're not necessarily coupled. Like a switch. A switch is present. Or you could have something over here that's using a memory and it only needs that memory for whatever it's doing, but it doesn't mean that that memory is somehow connected to or to something over here that's doing something completely different. But, in any event, I do want to point out, too, that this term is not that. It's obviously relatively common in the electronic arts. It has appeared in district court actions. Many district courts have found it means both direct or indirect coupling, and I think almost on a daily basis. Well, we have a Federal Circuit case that says that. It's non-practical. It says it quite clearly. Judge Murray wrote it. Yes. And the examiners see it almost on a daily basis, and so to, you know, require them to construe coupled to as requiring a direct coupling would be, you know, very different from what they're doing now. They always read it broadly unless the specification indicates otherwise. And, in fact, there are... I think we should give Mr. Pollack his rebuttal time. You have your argument, Ms. Nelson. Thank you. Mr. Pollack. Thank you very much, Your Honor. I just want to address a few points. The first, the idea that power integration somehow varied its construction. The construction has always been that two elements are coupled such that a voltage, current, or control signal passes from one circuit to the other. That's always been the construction. It was the construction of the district court. It was the construction in the Patent Office that was advocated by power integrations. This issue about whether intervening components are allowed was something that the court talked about in its opinion. It wasn't in the formal construction, but we agree that an intervening component is not precluded. What is precluded is an intervening component that breaks the control relationship, that prevents the counter from controlling the digital analog converter, exactly what happens with a ROM. And one thing we mentioned and we talked about below is that the Patent Office can't point to any component that they would say would be an intervening component that wouldn't break the control relationship if a ROM doesn't. And we think that's an important point. If there was such a thing, they probably would have been able to come up with it. This point about, and I don't know whether it's appropriate, but it was brought up, is that the difference between the prior art and the patent isn't a big deal or it's not that big a difference. Under anticipation, if there's a difference, there can't be anticipation. It's different. This court has already ruled on the obviousness question that actually that difference is a lot bigger than one might presume from the face of the prior art, and it addressed that in detail in its opinion, and I believe correctly. As the court pointed out, the purpose of this invention was to achieve frequency variation in an economical circuit that reduces the number of external components and works in a way that allows the frequency to be spread in a predictable cyclical manner that varies it around a target frequency. That's discussed in the specification. I don't believe that you can read the specification and say, oh, the patentee contemplated that random variation using a ROM, which is by definition an external component, was something that was appreciated or suggested in any way in the patent. And as to the question of whether or not power integrations could have amended the claims, your court is very well aware that there was a co-pending litigation, a finding of infringement had already occurred, a finding of validity had already occurred under the construction that we had, and so power integrations didn't believe that amendment was necessary. They believed that the claims were clear, and also practicality of it was that we believe that if we did make some sort of an amendment, as suggested by the office, that the party in the present case would be arguing that there was a material difference, and it would argue intervening rights, et cetera. And so the practicality is that it's not an unfettered ability to amend claims when you have a co-pending litigation. And so we actually did amend the claim to specifically address an issue that the examiner had raised about what he believed was unclear about the relationship between the counter and the digital analog converter, and so the claim did get amended to make it specific that yes, the counter and the digital analog converter are coupled, and it's that coupling which allows the counter to cause the digital analog converter to vary the frequency. I very much appreciate your time, especially the extra time I had when I was here. Thank you, Mr. Pollack. I thank both counsel. The case is taken under submission.